# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| T JASON NOYE, | : | |
| individually and on behalf | : | |
| of all others similarly situated, | : | No. 1:15-cv-02253 |
|     Plaintiffs | : | |
| | : | (Judge Kane) |
|     v. | : | |
| | : | |
| YALE ASSOCIATES, INC., | : | |
|     Defendant | : | |

## MEMORANDUM

Before the Court is Plaintiff's unopposed motion for preliminary approval of class action settlement and notice to the class.  (Doc. No. 89.)  For the reasons that follow, the Court will grant the motion and order that a fairness hearing be scheduled.

## I.      BACKGROUND

On November 24, 2015, Plaintiff T Jason Noye ("Plaintiff") filed a putative class action complaint, on behalf of himself and all others similarly situated,[1] in this Court against Defendant Yale Associates, Inc. ("Defendant"), alleging that Defendant violated the Fair Credit Reporting Act ("FCRA"), codified at 15 U.S.C. §§ 1681a-1681x, in connection with its "national database of public records and related employment histories as a nationwide consumer reporting agency ('CRA')," which it maintains "to prepare and furnish consumer reports for employment and other purposes."  (Id. ¶¶ 1-2.)  More specifically, Plaintiff has alleged that Defendant failed "to provide required FCRA notices to Plaintiff in violation of [the FCRA], and for maintaining a policy and practice of inaccurately reporting Pennsylvania summary offenses, a separate and less serious category of criminal offense, as misdemeanors."  (Id. ¶ 3.)  In Count I, Plaintiff alleges a

---

[1] The Court observes that while the docket in this case lists Plaintiff as "T. Jason Noye," Plaintiff's filings refer to Plaintiff by name using "T Jason Noye" and "TJ Noye" at various times.  See, e.g., Doc. Nos. 89 at 1, 89-2 at 1.

violation of 15 U.S.C. § 1681k(a) as a result of Defendant's failure "to notify consumers contemporaneously of the fact that adverse public and criminal record information is being provided to employers or prospective employers" and "to maintain strict procedures to insure that the public record information it sells to employers is complete and up to date." (Id. at 11-12.) Through Count II, Plaintiff alleges a violation of 15 U.S.C. §1681e(b) on the grounds that Defendant "misreport[ed] Pennsylvania summary offenses in Pennsylvania as misdemeanors or more serious offenses, thereby failing to following reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom a consumer report relates, in violation of [FCRA]." (Id. at 12-13.)

On March 17, 2016, Defendant moved to strike the class allegations in the complaint under Federal Rule of Civil Procedure 23 and for dismissal of Count I of the complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 24.) The Court denied Defendant's motion in a Memorandum and Order dated October 27, 2016. (Doc. Nos. 45, 46.) Following the disposition of Defendant's motion to dismiss, Defendant filed an answer to the complaint on April 19, 2017. (Doc. No. 59.) On September 12, 2017, upon consideration of the parities' joint motion to stay all case management deadlines while the parties conducted mediation (Doc. No. 70), the Court granted the parties' request and ordered that all applicable deadlines be stayed on September 12, 2017 (Doc. No. 71). This stay was extended for additional periods multiple times upon the parties' request. (Doc. Nos. 73, 76, 78, 81, 83.) On November 21, 2018, Plaintiff filed an unopposed motion for preliminary approval of class action settlement and notice to the class (Doc. No. 84), along with a brief in support thereof (Doc. No. 85). Counsel subsequently notified the Court on March 15, 2019 that the parties agreed to certain revisions in the proposed

settlement and notice (Doc. No. 87), and based on this representation, the Court issued an order on March 19, 2019 that deemed the motion moot and directed Plaintiff to file a renewed motion and supporting documents that incorporate the parties' revisions (Doc. No. 88). On April 2, 2019, in response to said Order, Plaintiff filed the instant unopposed motion for preliminary approval of class action settlement and notice to the class (Doc. No. 89), accompanied by a brief in support thereof (Doc. No. 90).

In the instant motion, Plaintiff requests an Order that: (1) preliminarily approves the parties' Revised Settlement Agreement and Release ("Agreement") (Doc. No. 89-2) for purposes of allowing dissemination of notice of the settlement to the proposed Settlement Class and pending a final approval hearing; (2) establishes a date for a final approval hearing as to the proposed settlement; (3) approves the form of class notice ("Notice" or "CAFA Notice"); (4) approves the notice plan and directing that notice be made available and published; (5) establishes a deadline for the submission of papers in support of final approval of the proposed Agreement and objections by members of the Settlement Class; (6) sets forth a deadline by which Class Members may opt out of the class; (7) appoints Plaintiff, TJ Noye, as the Class Representative;[2] and (8) appoints James A. Francis, Esq. and David A. Searles, Esq., of the law of firm of Francis & Mailman, P.C., and Marielle Macher, Esq. of the Community Justice Project as counsel for the class. (Doc. No. 89-3.)

In connection with his uncontested motion (Doc. No. 89), Plaintiff submitted the following documents: a supporting brief (Doc. No. 90), which incorporates Plaintiff's brief submitted in connection with the earlier motion for preliminary approval that was deemed moot (Doc. No. 85); the affidavit of Joseph A. Taylor, Vice President and founding member of

---

[2] While the caption of this action lists Plaintiff as "T. Jason Noye," Plaintiff's proposed preliminary approval order refers to Plaintiff as "TJ Noye." (Doc. No. 89-3 at 3.)

Defendant, explaining the basis for the number of potential Class Members calculated by the parties (Doc. No. 89-1); the parties' proposed Agreement (Doc. No. 89-2); a proposed Final Approval Order (Doc. No. 89-3); a proposed Preliminary Approval Order (Doc. No. 89-4);[3] and a proposed form of Notice to the Class (Doc. No. 89-5).[4]

## II. LEGAL STANDARD

### A. Class Action Settlement

Federal Rule of Civil Procedure 23(e) governs the settlement of class actions and the procedures that apply for review of a class action settlement. See Fed. R. Civ. P. 23(e) (setting forth the "procedures [that] apply to a proposed settlement, voluntary dismissal, or compromise"); see also In re Nat'l Football League Players Concussion Litig., 775 F. 3d 570, 580-81 (3d Cir. 2014) (explaining that Rule 23(e) "provides the procedures applicable to settlements, voluntary dismissals, or compromises" in the context of class actions (citing Fed. R. Civ. P. 23(e))). Rule 23(e) imposes the following requirements as to the procedure applicable to a proposed settlement: (1) that the Court "direct notice in a reasonable manner to all class members who would be bound by the proposal"; (2) that, "[i]f the proposal would bind class members, the [C]ourt [] approve it only after a hearing and only on finding that it is fair, reasonable, and adequate"; (3) that "[t]he parties seeking approval [] file a statement identifying any agreement made in connection with the proposal"; (4) that "[i]f the class action was previously certified under Rule 23(b)(3), the [C]ourt may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier

---

[3] Plaintiff also appears to have submitted the same proposed preliminary approval order at Docket Number 89-6.

[4] Where possible, the Court has referred to certain docket entries and definitions herein using the definitions set forth in the parties' Revised Settlement Agreement and Release. (Doc. No. 89-2 at 2-5.)

opportunity to request exclusion but did not do so"; and (5) that "[a]ny class member may object to the proposal if it requires court approval under this subdivision[,]" and that "[t]he objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specific the grounds for the objection." See Fed. R. Civ. P. 23(e).

A court's decision to preliminarily approve a proposed class action settlement "is not a commitment [to] approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" See Gates v. Rohm & Haas Co., 248 F.R.D. 434, 438 (E.D. Pa. 2008) (quoting Smith v. Prof. Billing & Mgmt. Servs., Inc., No. 06-cv-4453, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2017)). A preliminary approval determination "establishes an initial presumption of fairness." See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig., 55 F. 3d 768, 785 (3d Cir. 1995) (citing HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992)). Further, the preliminary approval process entails a determination of "whether notice to the [c]lass and the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile." See WILLIAM RUBENSTEIN, ET AL., NEWBERG ON CLASS ACTIONS § 13:13 n.9 (5th ed. 2011) (citing Klug v. Watts Regulator Co., Nos. 8:15-cv-61, 8:16-cv-200, 2016 WL 7156478, at *6 (D. Neb. Dec. 7, 2016)). "Where the proposed settlement appears to be the product of serious, informed, non–collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." In re Nasdaq Market-Makers Antitrust Litig., 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citing MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41 (1995)); see also Gen. Motors Corp., 55 F. 3d at 785 (identifying perquisites for preliminary approval of class action settlement).

### B. Conditional Certification of the Settlement Class

Additionally, if "the Court has not already certified a class, the Court must also determine whether the proposed settlement class satisfies the requirements of Rule 23." See Gates, 248 F.R.D. at 439 (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997)). In this context, the Court "should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." See MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004) (citing id. § 21.22). The Court may conditionally certify a class for settlement purposes, "leaving the final certification decision for the fairness hearing." See Gates, 248 F.R.D. at 439.

Rule 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if" the following requirements are met:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). As noted supra, the Court must also determine that the action satisfies at least one subsection of Rule 23(b). See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011). In the case at bar, Plaintiff relies on Rule 23(b)(3), which is applicable when "the [C]ourt finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." See Fed. R. Civ. P. 23(b)(3).

## III. DISCUSSION

### A. Preliminary Certification of Class Action

#### 1. Proposed Settlement Class Definition

The parties define the proposed "Class Members", "Settlement Class Members", the "Class", or the "Settlement Class" as follows:

> [a]ll individuals who were subject to at least one consumer report created by Yale containing one or more traffic violations; offenses listed as pending awaiting trial; driving while intoxicated, driving under the influence, or operating while intoxicated offenses; felonies; misdemeanors; or violations, infractions, or summary offenses; which included records provided by Pennell from its court searches, less those reports which included admitted convictions on the application and those where Yale personally spoke to the applicants and confirmed the public record, from November 24, 2010 through November 30, 2017.

(Doc. No. 89-2 at 2.) Upon review of this proposed definition, the Court considers this definition to be sufficiently "precise, objective and presently ascertainable" for purposes of this preliminary determination. See MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.222 (2004). Accordingly, the Court proceeds to its examination of whether the requirements set forth in Rule 23(a)(1) through (a)(4) are satisfied.

### 2.      Numerosity

The numerosity requirement is satisfied if "the class is so numerous that joinder of all members is impracticable." See Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." See Stewart v. Abraham, 275 F. 3d 220, 226-27 (citing 5 James Wm. Moore, Moore's Federal Practice § 23.223(a) (Matthew Bender 3d ed. 1999)). Here, Plaintiff represents that the Settlement Class would include 1,115 members, in light of the total number of reports subject to the conditions set forth in the proposed definition explained supra, that have been identified by the parties. (Doc. No. 89-1 at 3.) Upon consideration of this figure, the Court finds that, for purposes of preliminary certification, the numerosity requirement is met.

### 3. Commonality

The second element of Rule 23(a) requires that "there are questions of law or fact common to the class." See Fed. R. Civ. P. 23(a)(2). "A putative class satisfies Rule 23(a)'s commonality requirement if 'the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" Rodriguez v. Nat'l City Bank, 726 F. 3d 372, 382 (3d Cir. 2013) (quoting Baby Neal v. Casey, 43 F. 3d 48, 56 (3d Cir. 1994))). "Their claims must depend upon a common contention . . . that is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." In re Nat'l Football League Players Concussion Injury Litig., 821 F. 3d 410, 427 (3d Cir. 2016) (omission in original) (quoting Dukes, 564 U.S. at 350). Plaintiff asserts that the primary legal question presented in the instant case "is whether Defendant willfully and negligently violated [] FCRA by failing to provide required notices to Plaintiff in violation of 15 U.S.C. § 1681k(a), and for maintaining a policy and practice of inaccurately reporting Pennsylvania summary offenses, a separate and less serious category of criminal offense, as misdemeanors, in violation of 15 U.S.C. § 1681e(b)." (Doc. No. 85 at 15.) For purposes of preliminary certification, the Court finds that the commonality requirement is satisfied, as well. See Rodriguez, 726 F. 3d at 383 ("[T]here may be many legal and factual differences among the members of a class, as long as all were subjected to the same harmful conduct by the defendant." (citing Baby Neal, 43 F. 3d at 56)).

### 4. Typicality

Pursuant to Rule 23(a)(3)'s typicality requirement, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." See Fed. R. Civ. P. 23(a)(3). In the Third Circuit, this requirement has been recognized as having a "low

threshold." See In re Nat'l Football League Players Concussion Injury Litig., 821 F. 3d at 428

(quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F. 3d 154, 182-83 (3d Cir.

2001)).  Accordingly, "[e]ven relatively pronounced factual differences will generally not

preclude a finding of typicality where there is a strong similarity of legal theories[] or where the

claim arises from the same practice or course of conduct."  See id. (quoting In re Prudential Ins.

Co. Am. Sales Practice Litig. Agent Actions, 148 F. 3d 283, 311 (3d Cir. 1998)).  Here, Plaintiff

asserts that the typicality requirement has been satisfied because "[t]he Class Representative is a

member of the Settlement Class, has the same interest in resolution of the issue as all other

members of the Class[,] and his claims are typical of all members of the Class."  (Doc. No. 85 at

16.)  The Court agrees with this contention, and for purposes of preliminary certification, finds

that the typicality requirement is met.

### 5.    Adequacy of Representation

Rule 23(a) also imposes a fourth requirement: that "the representative parties will fairly

and adequately protect the interests of the class."  See Fed. R. Civ. P. 23(a)(4).  In order to

determine whether this requirement has been met, the Court must examine "(1) whether the

representatives' interests conflict with those of the class and (2) whether the class attorney is

capable of representing the class."  See Newton, 259 F. 3d at 185 (citing Gen. Telephone Co. of

Sw. v. Falcon, 457 U.S. 147, 157 (1982); Barnes v. Am. Tobacco Co., 161 F. 3d 127, 141 (3d

Cir. 1998)).  Having reviewed the record in this case, the Court is persuaded that there is no

conflict of interest between Plaintiff and the members of the Settlement Class, and that the

evident competence and experience on the part of Plaintiff's counsel satisfies Rule 23(a)'s

requirement as to adequacy of representation.

### 6.    Rule 23(b)(3)

As noted <u>supra</u>, in addition to examining whether the four requirements bestowed by Rule 23(a) have been met, the Court must determine whether the proposed Settlement Class "satisf[ies] at least one of the three requirements listed in Rule 23(b)." <u>See Dukes</u>, 564 U.S. at 345. In the instant case, the parties refer to Rule 23(a)(b)(3), which governs cases where "the questions of law or fact common class members predominate over any questions affecting only individual members," and when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." <u>See</u> Fed. R. Civ. P. 23(b)(3).

The former inquiry – referred to as the predominance inquiry – examines "whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." <u>See Sullivan v. DB Invs., Inc.</u>, 667 F. 3d 273, 298 (3d Cir. 2011). According to Plaintiff, this requirement is met because Plaintiff has "allege[d] on behalf of the Class that Defendant failed to comply with [S]ection 1681K of [] FCRA by failing to provide contemporaneous notice to consumer job applicants about whom it reported information for employment purposes, and also failing to maintain strict procedures to insure that the public record information it reported was complete and up to date." (Doc. No. 85 at 17.) Plaintiff further maintains that "[t]he internal policies and procedures that Defendant followed in preparing reports containing public record information and notifying consumers about the sale of such reports to employers – factual issues central to Plaintiff's claims – are generally common to all members of the Settlement Class." (<u>Id.</u> at 17-18.) Lastly, Plaintiff notes that Plaintiff has claimed, on behalf of the Settlement Class, that Defendant's alleged FCRA violations are "willful" for purposes of the causes of action asserted in the complaint. (<u>Id.</u> at 18.) The Court is satisfied that, for purposes of preliminary certification, there are common questions surrounding Defendant's compliance with FCRA such that these questions

predominate over any individual questions of law or fact in this case. See Sullivan, 667 F.3d at 297-98; In re Linerboard Antitrust Litig., 305 F. 3d 145, 163 (3d Cir. 2002).

The second focal point for purposes of Rule 23(b)(3) – the superiority inquiry – requires the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." See In re Cmty. of N. Va. Mortg. Lending Practices Litig., 795 F. 3d 380, 409 (3d Cir. 2015) (quoting In re Cmty. Bank of N. Va., 418 F. 3d 277, 309 (3d Cir. 2005)). As to this prong, Plaintiff asserts that all four factors pertinent to this inquiry militate in favor of finding superiority because in this case, "[s]eparately litigating the common issues that bind the Settlement Class would be a practical impossibility, even assuming consumers had notice of their claims and it were economically feasible to pursue these claims on their own[,]" and in light of the "strong presumption in favor of a finding of superiority" in instances "[w]here the alternative to a class action is likely to be no action at all for most of the class members." (Doc. No. 85 at 18) (citing Cavin v. Home Loan Ctr., 236 F.R.D. 387, 396 (N.D. Ill. 2006)).[5] Having considered these arguments, as well as the pertinent authority, the Court agrees that in this case, resolution of this case through class action settlement presents "a more desirable outcome for the class than individualized litigation." See In re Gen. Motors Corp., 55 F. 3d at 796.

In light of the Court's conclusion that the requirements set forth in Rules 23(a) and 23(b)(3) have been met on a preliminary basis, the Court will preliminarily certify the proposed

---

[5] These factors include: "the class members' interests in individually controlling the prosecution or defense of separate actions"; "the extent and nature of any litigation concerning the controversy already begun by or against class members"; "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class action." See Fed. R. Civ. P. 23(b)(3).

Settlement Class. Accordingly, the Court turns to its examination of whether preliminary approval of the proposed settlement agreement is proper.

**B.       Preliminary Approval of Settlement Agreement**

The Court initially notes that it is satisfied that the proposed settlement agreement is the product of "serious, informed, non-collusive negotiations." See In re Nasdaq, 176 F.R.D. at 102. In the instant case, the parties previously engaged in a full-day mediation on October 17, 2017, during which they "made substantial progress toward resolution during that session and agreed to continue negotiations." (Doc. No. 85 at 9.) Further, after the parties requested that the Court stay all case management deadlines to permit additional negotiations, "the parties continued to work toward finalizing a term sheet, settlement agreement, and associated documentation[,]" which involved the parties proceeding "back and forth on the settlement terms and eventually produc[ing]" the proposed settlement agreement that is currently before the Court. (Id.) In addition, the Court finds it apparent from Plaintiff's submissions that Plaintiff's counsel is highly experienced in the context of complex commercial litigation. (Id. at 16.) Accordingly, having found that the proposed settlement agreement arose out of "serious, informed, non-collusive negotiations[,]"[6] the Court next addresses the terms of the proposed Agreement.

Upon review of the terms of the proposed settlement agreement, the Court is satisfied that the Agreement contains no "obvious deficiencies" and "falls within the range of possible approval." See In re Nasdaq, 176 F.R.D. at 102. "To determine whether a settlement 'falls within the range of possible approval,' a court must 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" In re Nat'l Football League Players' Concussion Injury Litig., 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) (quoting In re Tableware

---

[6] See In re Nasdaq, 176 F.R.D. at 102.

Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). "This does not mean the value of the compromise must be dollar-for-dollar the equivalent of the claim." In re Ionosphere Clubs, Inc., 156 B.R. 414, 427 (S.D.N.Y. 1993) (citing In re Energy Cooperative, Inc., 886 F. 2d 921 (7th Cir. 1989)). Rather, "a 'satisfactory settlement' may only 'amount to a hundredth or even a thousandth part of a single percent of the potential recovery.'" See In re Shop-Vac Mktg. & Sales Practices Litig., No. 4:12-md-2380, 2016 WL 3015219, at *2 (M.D. Pa. May 26, 2016) (quoting City of Detroit v. Grinnell Corp., 495 F. 2d 448, 455 (2d Cir. 1974), abrogated by Goldberger v. Integrated Res., Inc., 209 F. 3d 43 (2d Cir. 20000)).

The parties' Agreement provides that Defendant will pay a settlement fund totaling $562,500.00 (Doc. No. 89-2 at 6), which, after being administered by the Settlement Administrator named in the proposed Agreement, results in compensation of approximately $313.00 for each of the 1,115 potential Class Members (Doc. No. 90 at 2). The parties have also agreed that, subject to the Court's final approval, Plaintiff may seek a service award reflecting the amount of time and effort expended in acting as a Class Representative for the Settlement Class in the amount of $10,000.00. (Doc. No. 89-2 at 7.) In addition, Defendant agrees to pay the costs of notice to the class, as well as the cost of settlement and claims administration. (Id.) Further, the parties also agree, that, subject to final approval by the Court, the appointed class counsel may seek an award of attorney's fees "plus reimbursement of litigation costs and expenses in an amount not to exceed one-third of the Settlement Fund." (Id.) In exchange, the members of the Settlement Class agree to release any and all claims against Defendant and certain affiliates of Defendant listed in the Agreement stemming from the alleged FCRA violations that are the subject of this case. (Id. at 4, 8.)

Having considered the risks faced by the parties in continuing the above-captioned litigation, as well as the benefits provided by the proposed settlement agreement, the Court finds that the proposed Agreement falls within the range of possible approval for purposes of preliminary approval. Here, the parties did not agree to the proposed payment of attorney's fees and costs, "an amount not to exceed one third of the Settlement Fund for the combined attorney's fees and costs incurred by Class Counsel in the prosecution of this litigation[,]" until after the parties reached an agreement in principle as to other terms in the proposed Agreement. (Doc. No. 85 at 12.) Further, the proposed monetary award to Plaintiff is permissible in class action litigation and appears reasonable at this stage. See Sullivan, 667 F. 3d at 333 n.65 (discussing permissibility of certain elements of a proposed settlement amount). Accordingly, the Court will preliminarily approve the Agreement submitted in this case. (Doc. No. 89-2.)

## C. Proposed Notice to Class

The Court next turns to Plaintiff's request for approval of the proposed means of notice directed to members of the Settlement Class. Federal Rule of Civil Procedure 23(c)(2)(B) requires that "the Court [] direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." See Fed. R. Civ. P. 23(c)(2)(B).[7] Under Rule 23(c)(2)(B), therefore, "[t]he notice must clearly and concisely state in plain, easily understood language" the following:

(i) the nature of the action;

---

[7] In a similar vein, Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the [C]ourt will likely be able" both to "approve the proposal under Rule 23(e)(2); and [] certify the class for purposes of judgment on the proposal." See Fed. R. Civ. P. 23(e)(1)(B). "The Rule 23(e) notice is designed to summarize the litigation and the settlement and 'to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation.'" In re Prudential Ins., 148 F. 3d at 327 (quoting RUBENSTEIN, ET AL., supra, at § 8.32 at 8-109).

(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Additionally, due process demands "that notice be 'reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections.'" See In re Nat'l Football League Players Concussion Injury Litig., 821 F. 3d at 435 (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)).

In connection with the instant motion, Plaintiff has submitted a proposed form of notice of the settlement to the members of the Settlement Class. (Doc. No. 89-5.) Plaintiff proposes that American Legal Claim Services, LLC be approved as the Settlement Administrator (Doc. No. 89-2 at 4), and that within fifteen (15) days of preliminary approval by the Court, Defendant will provide the Settlement Administrator with a list of the Class Members' contact information so that the notice may be mailed to them (id. at 6). The proposed notice also lists a phone number and internet website for use by the Class Members in ascertaining further information about the settlement. (Doc. No. 89-5.) Further, Plaintiff represents that Defendant will pay the Settlement Administrator $7,500.00 for purposes of printing and mailing the settlement notice to the Class Members. (Doc. No. 89-2 at 6.)

Having reviewed the proposed notice and Plaintiff's representations as to the parties' plans for providing notice to the Class Members, the Court is satisfied that the parties' proposed notice (Doc. No. 89-5) satisfies Federal Rule of Civil Procedure 23(c)(2)(B) and 23(e)(1), as well as due process. The proposed notice adequately describes the nature of this case, describes the

proposed Settlement Class, identifies the claims involved, provides that class members are represented by class counsel but may appear through their own attorney at their own expense if they choose to be represented by different counsel, permits members to opt out of the Settlement Class, and addresses whether this case has a binding effect on those who opt out of the Settlement Class. See Fed. R. Civ. P. 23(c)(2)(B). Having found that the proposed notice is designed to reach the class members efficiently, the Court will approve the proposed settlement notice (Doc. No. 89-5), except for the notice's description of class counsel for reasons discussed below,[8] and approve American Legal Claim Services, LLC to serve as the Settlement Administrator.

### D.      Appointment of Class Counsel and Class Representative

Plaintiff moves the Court for the appointment of class counsel for the settlement class. Specifically, Plaintiff requests the appointment of James A. Francis, Esq. and David A. Searles, Esq., of the law of firm of Francis & Mailman, P.C., and Marielle Macher, Esq. of the Community Justice Project as counsel for the class. (Doc. Nos. 89-4, 89-6.) "[T]he application [for appointment as class counsel] is generally submitted as part of the certification motion." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.273 (2004). "In fact, the Third Circuit has stated that 'a district court's decision to certify a class must precede the appointment of class counsel." In re Shop-Vac, No. 4:12-md-2380, at *7 (quoting Sheinberg v. Sorensen, 606 F. 3d 130, 132 (3d Cir. 2010)); see also RUBENSTEIN, ET AL., supra, at § 3.84 ("[I]t is clear that a court must appoint class counsel at the same time it certifies the class.").

---

[8] The relevant portion of the proposed settlement notice (Doc. No. 89-5 at 6-7) should be amended in accordance with the Court's decision to decline to appoint class counsel at this preliminary stage. See Sheinberg, 606 F.3d at 132.

In the case at bar, because only Plaintiff's motion for preliminary certification of the class, specifically as to settlement purposes, is presently before the Court, the Court will decline to appoint class counsel at this time and, instead, will designate James A. Francis, Esq. and David A. Searles, Esq., of the law of firm of Francis & Mailman, P.C., and Marielle Macher, Esq. of the Community Justice Project as Interim Counsel.  See Sheinberg, 606 F.3d at 132. Further, the Court will preliminarily appoint Plaintiff T Jason Noye as Class Representative.

## IV.    CONCLUSION

For the reasons stated above, the Court will grant Plaintiff's unopposed motion for preliminary approval of class action settlement (Doc. No. 89) and will preliminary certify the proposed Settlement Class.  The Court will also approve the proposed Notice, as amended per the Court's discussion herein, and the appointment of American Legal Claim Services, LLC to serve as Settlement Administrator.  An appropriate Order follows.